UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **GREGORY LAFRENIERE,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 4:23-cv-40066-MRG |
| **SPECTRUM HEALTH SYSTEMS, INC.,** | ) ) ) ) | |
| Defendant. | ) ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF. NO. 32]**

**GUZMAN, J.**

Plaintiff Gregory LaFreniere brings this action against his former employer, Spectrum Health Systems, Inc. ("Spectrum"), alleging wrongful termination and retaliation in violation of Mass. Gen. Laws ch. 151B ("Chapter 151B") and Title VII of the Civil Rights Act of 1964, 42 USC § 2000e et seq ("Title VII"), arising from his refusal to receive a COVID-19 vaccination. Before this Court is Defendant's Motion for Summary Judgment, ECF No. 32. For the reasons stated below, the motion is **GRANTED**.

I. **BACKGROUND**[1]

Spectrum is a not-for-profit 501(c)(3) charitable organization that provides substance abuse and mental health treatment services. [ECF No. 39 ¶ 1]. Spectrum has a contract with the Massachusetts Department of Correction ("DOC") to provide mental health and substance use treatment services in DOC facilities. [Id. ¶¶ 2, 10]. The DOC is a longtime client of Spectrum, and

---

[1] The facts are drawn from Plaintiff's Amended Complaint [ECF No. 1-14], Plaintiff's Opposition to Defendant's Statement of Material Facts [ECF No. 39], and the documents cited therein.

Spectrum's contract with DOC brings in millions of dollars annually, including $9.3 million in revenue in 2024. [Id. ¶¶ 8–9]. Pursuant to Spectrum's contract with the DOC, Spectrum is required to follow all federal, state, and DOC regulations, policies, and procedures. [Id. ¶ 11]. Mr. LaFreniere was an employee of Spectrum first hired in September of 2019. [Id. ¶ 2]. Mr. LaFreniere was hired to work as a Correctional Recovery Academy Counselor in a Spectrum program with the DOC at the Massachusetts Correctional Institution in Shirley, Massachusetts ("MCI-Shirley"). [Id. ¶¶ 2–3]. Mr. LaFreniere was later promoted, and, during the relevant period, was a Clinical Supervisor at MCI-Shirley. [Id. ¶ 5]. In this position, Mr. LaFreniere was responsible for onsite supervision of counselors that provided services to inmates at MCI-Shirley. [Id. ¶ 6]. Mr. LaFreniere's worksite for the duration of his employment with Spectrum was MCI-Shirley. [Id. ¶ 7]. Mr. LaFreniere's job required his exposure to inmate patients and other employees within DOC facilities. [Id. ¶ 25].

### A. The DOC's Initial COVID-19 Vaccination Mandate

All Spectrum employees working in DOC facilities were required to comply with the DOC's COVID-19 protocols, including those mandated by Executive Order 595, which required vaccination against COVID-19. [Id. ¶ 12]. Initially, the DOC allowed exemptions of its mandate for religious and medical reasons. [Id. ¶ 14].

Spectrum notified its employees working in DOC facilities of the DOC's vaccination mandate and the availability of religious and medical exemptions. [Id. ¶ 15]. Spectrum established a process for employees to request an exemption, in order to determine whether the request qualified as a reasonable accommodation. [Id. ¶¶ 16–17]. On September 21, 2021, Mr. LaFreniere requested and received an exemption from the vaccination mandate based on his religion. [Id. ¶¶ 18, 22].

### B. The DOC's Revised COVID-19 Vaccination Mandate

Around November 30, 2021, the DOC notified Spectrum that, effective January 3, 2022, it would no longer allow any unvaccinated employees into DOC facilities if that employee would have exposure to inmate patients, the public, or DOC employees, regardless of any previously allowed religious or medical accommodations in place. [Id. ¶ 24]. Spectrum then notified its employees working at DOC sites of the DOC's revised position on vaccination. [Id. ¶ 26]. This change only applied to employees of Spectrum that worked on DOC sites, including Mr. LaFreniere, whose job required exposure to inmate patients and other employees within DOC facilities. [Id. ¶¶ 25–28]. Spectrum asserts, and Mr. LaFreniere denies, that Mr. LaFreniere did not request any accommodation in relation to the DOC's revised position. [Id. ¶ 29].

### C. Plaintiff's Notification of the DOC's Updated Mandate

In December of 2021, Mr. LaFreniere received a letter from Spectrum containing the DOC's updated mandate, which stated that without a COVID-19 vaccination, Mr. LaFreniere would be prohibited from working at DOC sites. [ECF No. 1-14 ¶ 8; ECF No. 39 ¶ 30; LaFreniere Dep. 24:4–25:5, ECF No. 34-3]. Spectrum notified Mr. LaFreniere that he could secure an alternative job with the Spectrum if he did not want to receive the vaccination. [LaFreniere Dep. 25:18–22]. Mr. LaFreniere was also notified that if he was not fully vaccinated by the deadline of January 3, 2022, he would be placed on an unpaid leave of absence. [Id. 26:20–27:1]. Following these communications, Mr. LaFreniere asserts that he did not look at or apply to any open positions within Spectrum. [Id. 25:23–26:2; 30:6–18]. However, Spectrum asserts that Mr. LaFreniere applied for the position of Director of Training but was ultimately not selected for this role because he did not meet the role's education requirements. [ECF No. 39 ¶¶ 36–39].

### D. Termination

3

On January 8, 2023, Mr. LaFreniere was placed on an unpaid leave of absence. [ECF No. 39 ¶ 44]. While on administrative leave with Spectrum, Mr. LaFreniere began searching for employment outside of Spectrum and obtained a full-time position at another company in February of 2022. [Id. ¶¶ 46–47]. Spectrum terminated Mr. LaFreniere's employment effective May 24, 2022, due to his failure to comply with the DOC's COVID-19 vaccination mandate. [Id. ¶ 49].

### E. Plaintiff's Charge of Discrimination

Around June 3, 2022, Mr. LaFreniere filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Spectrum had discriminated against him based on his religion. [Id. ¶ 50]. Mr. LaFreniere alleges that the EEOC decided not to proceed further with its investigation after holding a hearing, and that he received a Right to Sue Letter on August 26, 2022. [ECF No. 1-14 ¶¶ 13–14]. Mr. LaFreniere filed his charge with the Massachusetts Commission Against Discrimination ("MCAD") on June 3, 2022, alleging that he was denied a reasonable accommodation and was terminated by Defendant because of his religious beliefs. [ECF No. 34-10].

### F. Procedural History

Mr. LaFreniere filed this action against Spectrum on November 23, 2022, in Worcester Superior Court. [See ECF No. 1-3]. Spectrum moved for dismissal on all counts for failure to state a claim pursuant to Massachusetts Rule of Civil Procedure 12(b)(6) and Massachusetts Superior Court Rule 9A on April 24, 2023. [ECF No. 1-9, 1-10]. On the same day, Mr. LaFreniere filed an Amended Complaint removing the majority of the common law claims and adding federal claims; this Amended Complaint now serves as the operative complaint.[2] [See ECF No. 1-14]. The

---

[2] The Court notes, as pointed out by Defendant, Count I of the Amended Complaint alleges a violation of Mass. Gen. Laws ch. 151, Massachusetts' minimum wage law, rather than Mass. Gen.

4

Massachusetts Superior Court then granted Spectrum's Motion to Dismiss directed at the original complaint on all counts. [See ECF No. 1-16, 1-17].

On May 15, 2023, Mr. LaFreniere filed a Motion to Vacate Ruling and Judgment, which was granted in state court on May 17, 2023. [ECF No. 1-18, 1-22]. Spectrum then filed a Notice of Removal on June 1, 2023. [ECF No. 1]. Spectrum filed a Motion for Summary Judgment as to all counts on December 16, 2024. [ECF No. 32]. Mr. LaFreniere was then granted an extension of time to file a response to the Motion for Summary Judgment. [ECF No. 35]. During this period, the parties entered into a Partial Stipulation in which Counts II and III of the Amended Complaint were dismissed with prejudice. [See ECF No.36]. Mr. LaFreniere then filed his Opposition to Spectrum's Motion for Summary Judgment on January 24, 2025. [ECF No. 38]. Spectrum replied to the Opposition on February 6, 2025. [ECF No. 41].

## II.  LEGAL STANDARD

A court may grant summary judgment when, making all inferences in favor of the nonmoving party, the evidence in the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Gattineri v. Wynn MA, LLC, 63 F.4th 71, 84 (1st Cir. 2023) (quoting Fed. R. Civ. P. 56(a)). "An issue is 'genuine' when a rational factfinder could resolve it either direction." Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 5 (1st Cir. 2018) (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010)). "A fact is 'material' when its (non)existence could change a case's outcome." Id. at 5 (quoting Borges, 605 F.3d at 5). If a properly supported summary judgment motion is presented, the nonmoving party must then "set forth specific facts showing that there is a genuine [dispute]

---

Laws ch. 151B, which is the state equivalent to Title VII of the Civil Rights Act. [ECF No. 33 at 1; see ECF No. 1-14]. The Court will construe this claim as brought under Chapter 151B.

5

for trial," and may not simply "rest upon mere allegation or denials of [their] pleading," but must instead "present affirmative evidence." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 256-57 (1986). In reviewing the evidence at the summary judgment stage, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Sharp, 692 F. Supp. 3d at 10 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). "However, '[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" Fernando v. Fed. Ins. Co., No. 18-10504-MBB, 2022 U.S. Dist. LEXIS 44315, at *3 (D. Mass. Mar. 14, 2022) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). To survive summary judgment, the nonmoving party must provide evidence that is "significantly probative" and more than "merely colorable." Anderson, 477 U.S. at 249, 264. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997) (citing Fed. R. Civ. P. 56(c) & (e)).

While summary judgment in disparate treatment discrimination cases is generally a "disfavored remedy . . . because the ultimate issue of discriminatory intent is a factual question," Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016) (quoting Blare v. Husky Injection Molding Sys. Bos., Inc., 646 N.E.2d 111, 114 (Mass. 1995)) Still, courts have granted summary in cases where plaintiffs fail to proffer sufficient evidence of discriminatory animus. See, e.g., Lee v. Howard Hughes Med. Inst., 607 F. Supp. 3d 52, 65 (D. Mass. 2022), appeal dismissed, No. 22-1540, 2023 WL 4544477 (1st Cir. Feb. 8, 2023) (entering summary judgment on a disparate treatment claim where plaintiff's evidence for discriminatory nonrenewal consisted of

"speculation about the influence of bias" which was "without more, insufficient to survive summary judgment"). Further, it is not the role of the Court to "substit[ute] judicial judgments for the business judgments of employers." Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 221 (1st Cir. 2008) (quoting Bennett v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007)).

### III.   DISCUSSION

####   A.   Count I: Religious Discrimination in Violation of Title VII and Chapter 151B

Title VII and its Massachusetts counterpart, Chapter 151B, prohibit religious discrimination in the employment context. 42 U.S.C. § 2000e-2(a); Mass. Gen. Laws ch. 151B. In relevant part, Title VII states that it is unlawful for employers to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). In Massachusetts, Chapter 151B similarly prohibits "an employer [from] impos[ing] upon an individual as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such individual to violate . . . his creed or religion." Mass. Gen. Laws ch. 151B § 4(1A). While "Chapter 151B has been interpreted largely to mirror Title VII, . . . the Supreme Judicial Court of Massachusetts at times construes the Massachusetts statute more broadly to effectuate the legislature's directive to apply it liberally . . . ." Thornton v. Ipsen Biopharmaceuticals, Inc., 126 F.4th 76, 81 (1st Cir. 2025) (internal quotation marks and citations omitted); Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 131 (1st Cir. 2004) (citing Wheatley v. AT & T, 636 N.E.2d 265, 268 (Mass. 1994)); see also Lopez v. Commonwealth, 978 N.E.2d 67, 75 n.8 (Mass. 2012) ("Title VII . . . is the Federal analogue to [Chapter] 151B."). Since "[n]either party has identified a material distinction between the federal and state laws" for the

7

purpose of this motion, the Court will consider the claims jointly. Thornton, 126 F.4th at 81 (quoting Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9, 12 n.1 (1st Cir. 2024)).

The First Circuit applies a "two-part framework" in analyzing claims of religious discrimination of this type. Rodrique v. Hearst Commc'ns, Inc., 126 F.4th 85, 90 (1st Cir. 2025) (quoting Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023)). First, a plaintiff must establish prima facie case of religious discrimination by demonstrating that a "bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 12 (1st Cir. 2012) aff'd, 32 F.4th 82 (1st Cir. 2022) (citing Cloutier, 390 F.3d at 133). Then, if a prima facia case is established, "the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." Lowe, 68 F.4th at 719 (quoting Cloutier, 390 F.3d at 133).

### 1. *Plaintiff's Prima Facie Case*

To establish a *prima facie* case of religious discrimination under Title VII, LaFreniere must show "(1) that [he] has beliefs that are religious and sincerely held, and (2) that [his] employer imposed upon her an employment requirement (3) that conflicted with those beliefs and (4) 'was the reason for the adverse employment action.'" Thornton, 126 F.4th at 81 (1st Cir. 2025) (quoting Lowe, 68 F.4th at 719).

LaFreniere alleges that he had a sincere religious belief that conflicted with Spectrum's COVID-19 vaccination requirement for employees working under a DOC contract, and that he was ultimately terminated for failing to comply with that requirement. [ECF No. 1-14 ¶ 10]. In this case, Defendant has not challenged whether Plaintiff can meet his *prima facie* case, rather the core dispute arises at the second stage of the analysis – whether Spectrum offered LaFreniere a

reasonable accommodation or that doing so would have resulted in an undue hardship. See Lowe, 68 F.4th at 719; [see ECF No. 33 at 5–6]. Furthermore, as discussed below, the Court finds that Spectrum has established an affirmative defense that relieves it of liability. Accordingly, "the Court need not determine whether [P]laintiff has established a prima facie case because, even assuming he has, his claim fails at the [affirmative defense] stage." Lavine v. Mass Gen. Brigham Inc., No. 23-10987-BEM, 2025 U.S. Dist. LEXIS 89722, at 12*-13* (D. Mass. May 12, 2025) (first alteration in original) (citing Andrade v. Mass. Dep't of Corr., No. 22-11899-FDS, 2025 U.S. Dist. LEXIS 18754, at *10 (D. Mass. Jan. 13, 2025)).

### 2. *Spectrum's Affirmative Defenses*

#### a. *Reasonable Accommodation*

As stated previously, if a plaintiff successfully establishes a *prima facie* case of religions discrimination, the burden then shifts to the "[defendant] employer to show that it offered a reasonable accommodation, or if it did not offer an accommodation, that doing so would have resulted in undue hardship." Lowe, 68 F.4th at 719. Title VII's reasonable accommodation requirement "is an effort to reconcile conflicts between religious practices and business concerns." Cloutier, 390 F.3d at 134. Title VII does not require than an employer grant an employee's "preferred accommodation," id. at 131, and "the employer needs to offer only one reasonable accommodation to satisfy its Title VII obligation, despite the employee's preferences," Sánchez-Rodriguez v. AT&T Wireless, 728 F. Supp. 2d 31, 40-4 (D.P.R. 2010); see Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 77-78, (1977) (shift exchange arrangement held to be reasonable accommodation under Title VII); Morrissette-Brown v. Mobile Infirmary Med. Ctr., 506 F.3d 1317, 1324 (11th Cir. 2007) (offer to transfer positions affirmed to be a reasonable accommodation under Title VII); Eversley v. MBank Dall., 843 F.2d 172, 176 (5th Cir. 1988) (scheduling changes

and alternative position affirmed to be reasonable accommodations); Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 82 (1986) (allowing an employee to take unpaid leave for religious found to be a reasonable accommodation under Title VII).

Moreover, Title VII does not require an employer to choose any particular reasonable accommodation as the "statute directs that *any* reasonable accommodation by the employer is sufficient to meet its accommodation obligation." Id. at 68 (emphasis added). Finally, settling on a reasonable accommodation is an interactive bilateral process. Cloutier, 311 F. Supp. 2d at 198 ("the search for a reasonable accommodation goes both ways."). "Although the employer is required under Title VII to accommodate an employee's religious beliefs, the employee has a duty to cooperate with the employer's good faith efforts to accommodate." Id.

Defendant posits that the Plaintiff "cannot establish that Spectrum failed to offer him reasonable accommodations" because the company granted LaFreniere's initial request for a religious exemption, [ECF No. 33 at 6], and when the DOC vaccination mandate changed to require COVID-19 vaccinations without exemptions, Spectrum provided him with additional accommodations by placing him on unpaid leave and allowing him to seek an alternate position within Spectrum. [ECF No. 39 ¶ 44; LaFreniere Dep. 25:18-22]. Based on this undisputed evidence offered by Defendant, this Court agrees.[3]

Defendant provided Plaintiff with reasonable accommodations and an abundance of opportunities to remain working at Spectrum despite his inability to comply with company and DOC policy due to his asserted religious beliefs. [ECF No. 39 ¶ 15-23]. Spectrum informed Mr. LaFreniere of the initial DOC vaccination mandate and provided information on the requisite

---

[3] Plaintiff objects to the characterization of Spectrum's actions as providing "accommodations" but does not dispute that he was granted an unpaid leave and allowed to seek an alternate position. [See ECF No. 39 ¶ 42].

10

policy to obtain an exemption for religious or medical reasons in a timely manner. [Id. ¶¶ 15-20]. Spectrum approved Mr. LaFreniere's exemption request, and Spectrum only informed Mr. Lafreniere that it would no longer be able to accept his exemption after the DOC changed its vaccination policy on January 3, 2022. [Id. ¶¶ 22, 24, 26]. After DOC's revised policy went into effect Mr. LaFreniere was prohibited from entering DOC facilities without obtaining a COVID-19 vaccination, therefore precluding him from performing integral parts of his job as a clinical supervisor at MCI-Shirley. [Id. ¶¶ 24, 30]. Despite this clear conflict with his ability to perform his job, Spectrum placed Mr. LaFreniere on unpaid leave and gave him an opportunity to apply for other positions within Spectrum where the company could exempt him from the vaccine requirement. [Id. ¶¶ 31–32]. While there is some dispute as to whether Plaintiff applied to any Spectrum positions during his over five months of administrative leave, it is undisputed that he began searching for alternative employment outside of Spectrum and actually obtained a full-time job elsewhere while still on leave with Spectrum. [Id. ¶¶ 45-47].

  Various courts have found that an opportunity to find an alternate position within the company and unpaid leave are reasonable accommodations. See Trans World Airlines, Inc., 432 U.S. at 77-78; Morrissette-Brown, 506 F.3d at 1324; Eversley, 843 F.2d at 176; Sánchez-Rodriguez, 728 F. Supp. 2d at 41-42. While Mr. LaFreniere asserts that he was not offered an accommodation because he was not offered an exact the same position as his clinical supervisor role, [ECF No. 38 at 4], an accommodation need not be the best in the eyes of the Plaintiff employee to be considered reasonable. See T. v. Alexander-Scott, 579 F. Supp. 3d 271, 286 (D.R.I. 2022). Spectrum only needed to provide one reasonable accommodation to Mr. LaFreniere, and the company provided several: it granted his initial religious exemption application, it placed him on leave without removing him from the company for a period totaling five months, and it

offered him an opportunity to find alternate positions in the company where he would not be interacting with individuals inside of DOC facilities, potentially exposing them to COVID-19. [ECF No. 39 ¶¶ 15-18, 21, 22, 30, 33, 44, 46, 47].

Furthermore, Plaintiff failed to engage in good faith in the bilateral interactive process of finding a reasonable accommodation. See Together Emples. v. Mass Gen. Brigham Inc., 573 F. Supp. 3d 412, 437-38 (D. Mass. 2021). Despite being placed on a period of unpaid leave and given an opportunity to apply for alternative positions within the company, Mr. LaFreniere does not recall taking any steps to try and apply to other non-DOC positions. [LaFreniere Dep. 25:18-26:2]. Indeed, Plaintiff found gainful employment elsewhere. [ECF No. 39 ¶ 47]. Additionally, the record is replete with examples of Spectrum's HR personnel communicating with Mr. LaFreniere in efforts to find an accommodation and Plaintiff responding in an outwardly hostile manner. [See e.g., ECF No. 34-8 at 2 (LaFreniere writing, "Spectrum is like someone who is in the car when a felony is being committed. You're both guilty"); id. at 3 (LaFreniere writing, "professing to be wise, you have become fools")]. In discussing reasonable accommodations, "[b]oth the employee and employer must act in good faith[.]" Together Emples, 573 F. Supp. 3d at 438 (citing EEOC v. Kohl's Dep't Stores, Inc., 774 F.3d 127, 132 (1st Cir. 2014). Making disparaging and hostile comments in addition to securing other employment when given leave to explicitly find an alternative placement within the company demonstrate Mr. LaFreniere's lack of good faith. The Court finds no dispute of fact that Spectrum did provide Mr. LaFreniere with reasonable accommodations for his religious beliefs, and that alone could be cause to grant summary judgment in Spectrum's favor. See Sánchez-Rodríguez, 673 F.3d at 13 (declining to reach the issue of undue hardship when defendant had proven it provided reasonable accommodations to the plaintiff).

Nonetheless, for the sake of thoroughness, the Court will also analyze whether Spectrum has proven that providing further accommodations would pose an undue hardship to the company.

### b. Undue Hardship

Regardless of whether a defendant employer has offered a reasonable accommodation to a plaintiff employee in a religious discrimination case, it may also raise the affirmative defense that providing such an accommodation would be an "undue hardship[.]" Id. at 12 (citing Cloutier, 390 F.3d at 133). Notwithstanding this Court's determination that Defendant did provide reasonable accommodations to Mr. LaFreniere, it further holds that providing additional accommodations beyond what the Spectrum provided to Mr. LaFreniere would have caused the Defendant an undue hardship.

As clarified by the Supreme Court in Groff v. DeJoy, 600 U.S. 447 (2023), an accommodation constitutes an undue hardship when the burden it imposes is "substantial within the overall context of an employer's business." Id. at 468; Rodrique, 126 F.4th at 91 (citing Groff, 600 U.S. at 470). In determining whether a burden is substantial, a court must consider all relevant factors related to the nature of the employer's operations. Groff, 600 U.S. at 470-71. This includes direct economic costs, such as the effects of the accommodation on staffing and overtime pay, as well as non-economic costs, like concerns over health and safety and reputational damage. Together Emps., 573 F. Supp. 3d at 435, aff'd, 32 F.4th 82 (1st Cir. 2022) (citing U.S. EQUAL EMP. OPPORTUNITY COMM'N, WHAT YOU SHOULD KNOW ABOUT COVID-19 AND THE ADA, THE REHABILITATION ACT, AND OTHER EEO LAWS: § L (2021)) (stating that costs include "the burden on the conduct of the employer's business – including, in this instance, the risk of the spread of COVID-19 to other employees or to the public"); Cloutier, 390 F.3d at 136 (finding that reputational concerns, including an employer's public image, are relevant to the undue hardship

analysis); Cyr v. Bos. Med. Ctr., No. 1:22-cv-11930-JEK, 2025 U.S. Dist. LEXIS 11168, at *14 (D. Mass. Jan. 22, 2025) ("Both economic and non-economic costs are relevant to the substantial hardship analysis."). In determining whether a particular requested accommodation would impose an undue hardship on an employer, courts must "take[s] into account all relevant factors in the case at hand, including the particular accommodations at issue and their impact in light of the nature, 'size and operating cost of [an employer]." Groff, at 470-71; Bazinet, 113 F. 4th at 18.

Spectrum asserts both that it provided reasonable accommodations to Plaintiff and that any further accommodations to Mr. Lafreniere would have posed an undue hardship on the company. [ECF No. 33 at 7]. The DOC is a major client of Spectrum's, doing business together for thirty-one years and generating $9.3 million for Spectrum in 2024. [ECF No. 39 ¶¶ 8–9]. Spectrum also employs ninety-nine individuals pursuant to the DOC contract. [Id. ¶ 10]. One condition of working with the DOC required Spectrum employees to follow all federal, state, and DOC regulations, policies, and procedures. [Id. ¶ 11]. This meant that Spectrum's DOC contract required Spectrum employees working in DOC facilities to comply with the DOC's revised COVID-19 protocols and Executive Order 595, both of which required vaccination against COVID-19 without exemption. [Id. ¶ 12, 24]. Failure to follow the DOC's COVID-19 vaccination mandate would breach the terms of Spectrum's contract with DOC – potentially losing millions of dollars and nearly 100 jobs, risk the viability of the decades-long business relationship, and subject Spectrum to substantial monetary penalties. [Id. ¶ 13].[4] These are serious economic consequences for Spectrum that would alone pose an undue hardship on the company.

---

[4] Plaintiff objects to this statement in the statement of facts as containing statements of law. The Court disagrees. The statement merely contains assertions of fact and no legal conclusions. Plaintiff's conclusory fail-safe objection "in the event that a response is required" is not sufficient to controvert this fact. [See ECF No. 39 ¶ 13]. Local Rule 56.1 requires that oppositions to

While being noncompliant with the DOC vaccination mandate had a great potential to impose a substantial financial burden on Spectrum, it also posed costs through significant health and safety risks. The DOC's revised COVID-19 vaccination requirement was intended to protect inmate patients, the public, and DOC employees in DOC facilities from exposure to unvaccinated individuals. [ECF No. 39 ¶ 24]. "[T]he risk of the spread of COVID-19 to other employees or to the public" is appropriately considered as a "cost[] of permitting unvaccinated employees to remain in the workplace" under Title VII. See Rodrique, 126 F.4th at 92-93 (quoting EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* § L (Mar. 1, 2022), https://perma.cc/QR9N-KCSP); see Cyr, 2025 U.S. Dist. LEXIS 11168, at *14; Together Emps., 573 F. Supp. 3d at 435. The Court concludes that potential loss of millions in revenue and nearly 100 jobs stemming from the DOC contract coupled with the significant threat to public safety and health presented an undue hardship on Spectrum that relieved it from granting further accommodations to Plaintiff than what was already provided.

Accordingly, based on the undisputed factual record, the Court finds that Spectrum is entitled to judgment as a matter of law on Plaintiff's religious discrimination claim because Spectrum both provided reasonable accommodations and met its burden in demonstrating that any further accommodations would pose an undue hardship. Summary judgment as to Plaintiff's discrimination claim is **GRANTED**.

### 3.  *Retaliation*

In Count I, Plaintiff alternatively raises a retaliation claim against Spectrum under Title VII and Chapter 151B. Spectrum asserts that Mr. LaFreniere's retaliation claim must be dismissed

---

statements of fact must be supported with page references to affidavits, depositions, and other documentation. Plaintiff has provided zero basis for this objection and the Court overrules it.

because he failed to exhaust his administrative remedies, and, even if he had, his claim lacks sufficient factual support. [ECF No. 33 at 8-9]. As will be explained below, the Court finds that Mr. LaFreniere sufficiently exhausted his claim, but that the retaliation claim must fail on summary judgment.

Both Title VII and Chapter 151B require an employee to exhaust the administrative process before filing a civil suit in court. Posada v. ACP Facility Servs, 389 F. Supp. 3d 149, 158 (D. Mass. 2019). Chapter 151B "requires a plaintiff to exhaust discrimination claims with MCAD before filing a civil action in Massachusetts Superior Court for discrimination or retaliation." Gudava v. Ne. Hosp. Corp., 440 F. Supp. 3d 49, 57 (D. Mass. 2020) (citing Mass. Gen. Laws ch. 151B, § 5). Section 9 of Chapter 151B permits a plaintiff to remove the case to the Massachusetts superior court on the expiration of 90 days after the filing of a complaint with MCAD, or sooner if a commissioner assents in writing. Mass. Gen. Laws ch. 151B, § 9. Massachusetts has a "work-sharing" agreement with the EEOC so that a charge filed with MCAD is automatically referred to the EEOC after MCAD's initial review. Devitt v. Sanofi-Aventis US, LLC, No. 4:23-cv-10516-MRG, 2025 U.S. Dist. LEXIS 149207, at *12 (D. Mass. Aug. 4, 2025) (quoting Williams v. City of Brockton, 59 F. Supp. 3d 228, 245 (D. Mass. 2014)). Thus, claims filed with MCAD or the EEOC are effectively filed with both agencies. Id.

A plaintiff in a civil action is generally limited to asserting claims that are within the scope of the MCAD investigation. Gudava, 440 F. Supp. 3d at 57 (citing Everett v. 357 Corp., 904 N.E.2d 733, 748 (Mass. 2009)). However, the MCAD complaint "is not . . . a 'rigid blueprint' for the civil action." Id. The "scope of investigation" rule holds "that a claim not expressly stated in an MCAD complaint may nonetheless be asserted in a subsequent civil action if 'it is based on acts of discrimination that the MCAD investigation could reasonably be expected to uncover.'" Id.

16

(quoting Windross v. Vill. Auto. Grp., Inc., 887 N.E.2d 303, 307 (Mass. 2008)). Claims of retaliation, like here, "are typically covered by the scope of investigation rule." Id. (citation omitted).

While Plaintiff did not use the word "retaliation" in his MCAD complaint, [ECF No. 34-10], under the scope of investigation rule, Plaintiff adequately stated his retaliation claim because it was based on alleged acts of discrimination that the MCAD investigation "could reasonably be expected to cover." Id. (quoting Windross, 887 N.E.2d at 307). Mr. LaFreniere asserted in his MCAD complaint that he was "denied a reasonable job accommodation *and terminated*" in violation of Title VII and Massachusetts law. [ECF No. 34-10 at 3]. His assertion that he was terminated as a result of not getting vaccinated is sufficient to raise a retaliation claim because it is made in conjunction with his other allegations relating to seeking a reasonable accommodation. Thus, Plaintiff has sufficiently exhausted his retaliation claim.

Under both Title VII and Chapter 151B it is also unlawful for "employers to retaliate against employees who complain about allegedly discriminatory employment practices." Gunter v. Shapley & Stern, Inc., No. 1:19-cv-12502-IT, 2021 U.S. Dist. LEXIS 84110, at *14 (D. Mass. Apr. 30, 2021) (citing 42 U.S.C. § 2000e-3(a); Mass. Gen. Laws ch. 151B, § 4(4)). The Court analyses retaliation claims under the same two-part framework as discrimination claims under Title VII and Chapter 151B. Gunter, 2021 U.S. Dist. LEXIS 84110 at *14. To establish a prima facie case of retaliation under Title VII and Chapter 151B, a plaintiff must show: (1) "[he] engaged in a protected activity, known to the employer"; (2) "[he] suffered an adverse employment action"; and (3) "there was a causal connection between the protected activity and the adverse employment actions." Ruffino v. State St. Bank and Tr. Co., 908 F. Supp. 1019, 1044-45 (D. Mass. 1995). To demonstrate they have engaged in a protected activity, a plaintiff must demonstrate either (1) they

have "'opposed any practice made by an unlawful employment practice by Title VII" or (2) "'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (quoting Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996). "Requesting a reasonable accommodation is a protected activity" under Title VII. Together Emples., 573 F. Supp. 3d at 444. An adverse employment action is one that would "'dissuade a reasonable worker from making or supporting a charge of discrimination.'" Stratton v. Bentley Univ., 113 F.4th 25, 42 (1st Cir. 2024) (quoting Burlington N. & S. F. Ry. Co. v. White, 548 U.S. 53, 54 (2006)). An adverse employment action "typically involves discrete changes in the terms of employment, such as 'hiring, *firing*, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (emphasis added) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). Once a plaintiff has satisfied *prima facie* showing of retaliation, the defendant must "articulate a legitimate, non-retaliatory reason for the challenged employment action." Together Emples., 573 F. Supp. 3d at 444 (citing Jones v. Walgreen Co., 679 F.3d 9, 20 (1st Cir. 2012)). Then, the plaintiff bears "'the ultimate burden of showing that [defendant's] explanation was, in fact, pretextual' and that the challenged employment action was the result of 'defendant's retaliatory animus." Id. (quoting Walgreen Co., 679 F.3d at 21).

Here Mr. LaFreniere's retaliation claim fails on the causation prong of his *prima facie* case. Plaintiff engaged in the protected conduct of seeking a reasonable accommodation, Together Emples., 573 F. Supp. 3d at 444, and faced an adverse employment action of termination, Morales-Vallellanes, 605 F.3d at 35 (citation omitted). However, the undisputed facts fail to demonstrate that Plaintiff was fired *because* he sought a reasonable accommodation. Indeed, Spectrum granted

Mr. LaFreniere's vaccine exemption request under the initial DOC policy, then when DOC rescinded the exemption option, Spectrum provided him reasonable accommodations of a leave of absence and an alternative position within the company. [ECF No. 33 at 6; ECF No. 39 ¶ 44; LaFreniere Dep. 25:18-22]. After an over five-month period on leave, Mr. LaFreniere obtained alternative full-time employment with an outside company and Spectrum terminated his employment. [ECF No. 39 ¶¶ 36-47, 49]. These reasons for termination would also suffice as "legitimate, non-retaliatory" reasons for Spectrum's employment action if Mr. LaFreniere could make out a prima facie case. See Together Emples., 573 F. Supp. 3d at 444. As has been held in numerous other similar vaccine exemption cases, "it was not [Mr. LaFreniere's] request for an accommodation that led to [his] termination, but [his] failure to get the COVID-19 vaccination after [his] request for accommodation was denied." See Devitt, 2025 U.S. Dist. LEXIS 149207, at *20-21 (D. Mass. Aug. 4, 2025); Together Emples., 573 F. Supp. 3d at 444 (holding that a plaintiff could not succeed on the merits of a retaliation claim where "the consequences for non-compliance are based on the employees' vaccination status, not whether or not they applied for an exemption"); Lavine v. Mass Gen. Brigham, No. 1:23-CV-10987-PBS, ECF No. 28, at *15 (D. Mass. Nov. 28, 2023) (unpublished) (holding in an almost-identical case, that Plaintiff could "not establish a causal connection between [their] religious exemption and [their] termination" when the termination was due to his failure to vaccinate, not his request for accommodation).

Accordingly, there is no genuine dispute of material fact regarding the circumstances of Mr. LaFreniere's termination and Spectrum is entitled to judgment as a matter of law on Plaintiff's retaliation claim.

## IV.     CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgement, ECF No. 32, is **GRANTED**.

**SO ORDERED.**

Dated: September 30, 2025

 /s/ Margaret R. Guzman  
Margaret R. Guzman  
United States District Judge